D+F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

ROBERT MANINO,

                 Petitioner,

   against

JOSEPH SMITH, Superintendent,

                 Respondent.
------------------------------------------------------------ X

04 CV 5220 (ARR)

NOT FOR PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

The pro se petitioner Robert Manino ("Manino" or "petitioner") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 3, 2004. Petitioner claims that his conviction was obtained by the use of evidence recovered in violation of his Fourth Amendment rights. For the reasons stated below, the court denies the instant petition for a writ of habeas corpus.

## BACKGROUND

On June 12, 2000, petitioner was convicted of robbery in the first degree and burglary in the first degree for having forced his way into Marie Carlino's home on January 4, 1999, where he displayed a knife and robbed her of jewelry before attempting to hide her in the basement. He was sentenced to a term of imprisonment of twenty-five years to life.

Before petitioner's trial in Supreme Court, Kings County, he had been tried and convicted in Queens County of another, similar robbery. The Supreme Court, Queens County, had held a pretrial hearing to determine, inter alia, the admissibility of evidence of five similar

1

crimes, including the one that is the subject of the instant habeas petition. The trial court found that petitioner's six crimes shared a unique modus operandi, ruling that the prosecutor could introduce evidence of them at trial. People v. Manino, 184 Misc.2d 81, 87-88 (N.Y. Sup. Ct. March 1, 2000). The court also denied petitioner's motion to suppress the black leather jacket he was wearing at the time of his arrest but precluded the admission of a Saint Jude medal that was also on his person at the time of the arrest. Id. at 88.

In his Kings County case, the conviction underlying the instant habeas petition, petitioner filed an omnibus motion seeking, inter alia, to suppress a knife seized during a search of his home. The Supreme Court denied his request for a hearing, "concluding that he was collaterally estopped from relitigating the issue of the admissibility of the knife based on [the] prior ruling in [the] Queens County criminal proceeding which purportedly determined that the defendant's wife consented to the search." People v. Manino, 306 A.D.2d 541, 542 (2003). On appeal, the Appellate Division ruled that the trial court had "erred in applying the doctrine of collateral estoppel because the issue of consent was not necessarily decided in the Queens County proceeding" before going on to find that "remittal for a hearing is not required because any error in admitting the knife was harmless beyond a reasonable doubt." Id. The court ruled that petitioner's remaining contentions, including those raised in his supplemental pro se brief, were without merit. Id. Petitioner thereafter sought leave to appeal to the New York Court of Appeals, which was denied by order dated September 30, 2003. People v. Manino, 100 N.Y.2d 622 (2003).

Petitioner filed a section 440 motion in Supreme Court, Kings County, as well as a petition for a writ of error coram nobis with the Appellate Division. Both motions raised claims not presented in the instant habeas petition.

Petitioner's conviction became final on approximately December 30, 2003, ninety days after the Court of Appeals denied leave to appeal. The applicable one year statute of limitations was tolled during the pendency of his post-conviction section 440 motion and his petition for a writ of error coram nobis. Manino's petition for a writ of habeas corpus was filed within the limitations period and is thus timely.

## DISCUSSION

I.  AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"[C]learly established Federal law, as determined by the Supreme Court of the United States" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state

court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Supreme Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court...should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required...the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Frances S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted). This deferential standard applies whenever the state court has adjudicated the federal claim on the merits, even if it did not explicitly refer to the federal claim or discuss the reasoning for its decision, as long as the decision finally resolved a party's claims and was based on the substance of the claim advanced, rather than on a procedural ground. Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001).

II.  Fourth Amendment Standard

Under Stone v. Powell, 428 U.S. 465 (1976), a federal habeas court is barred from reviewing the merits of a Fourth Amendment claim so long as the state has provided petitioner with the opportunity for a full and fair litigation of his claim. Fourth Amendment claims in habeas petitions may be undertaken "in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state

4

has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). An unconscionable breakdown occurs when the hearing judge fails to make a reasoned inquiry into a defendant's claims. Ortiz v. Artuz, 113 F.Supp.2d 327, 335 (E.D.N.Y. 2000). Where it has been established that "a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas review." Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002); see also Plunkett v. Johnson, 828 F.2d 954, 956 (2d Cir. 1987) (denying habeas relief when petitioner's Fourth Amendment claim was litigated in a suppression hearing and subject to state appellate review); Thebner v. Miller, 788 F.Supp. 714, 718 (E.D.N.Y. 1992) (finding that habeas review was not available for petitioner's Fourth Amendment claim where the claim had been litigated at the pretrial hearing and before the Appellate Division).

III.    Harmless Error Standard

The Second Circuit recently held that "when a state court explicitly conducts harmless error review of a constitutional error, a habeas court must evaluate whether the state unreasonably applied Chapman." Gutierrez v. McGinnis, 389 F.3d 300, 306 (2d Cir. 2004). The standard for harmless error established by Chapman v. California, 386 U.S. 18 (1967), is that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Id. at 24. As the Second Circuit noted in Gutierrez, the New York Court of Appeals interpreted Chapman in People v.

Crimmins, 36 N.Y.2d 230 (1975), holding that there must be "overwhelming" proof or evidence of the defendant's guilt absent the error before applying harmless error review. Id. at 241. The Second Circuit further noted in Gutierrez that state courts need not cite federal precedent in order for AEDPA deference to attach on federal habeas review, determining that the question to be resolved where the state court applied harmless error analysis, citing Crimmins, "is whether the Appellate Division reasonably applied Chapman or New York's equivalent interpretation." 389 F.3d at 308. Stated differently, when reviewing a state court's determination that constitutional error was harmless, a federal habeas court must consider whether the state court's ruling was contrary to or involved an unreasonable application of the harmless error standard established in Chapman.

IV. Merits

Petitioner claims that his conviction was obtained in violation of his Fourth Amendment rights. Specifically, he argues that the trial court committed constitutional error when it admitted into evidence a knife recovered from a search of his dwelling. Petitioner appears to make two arguments. First, he argues that Stone v. Powell should not bar the court from considering his claim on federal habeas review because "the state has provided no corrective procedure at all" and because he has "been denied any opportunity to litigate the constitutionality of the search in the state courts." Petitioner's Brief at 1-2 (emphasis in original). Second, identifying a standard of review and a harmless error test that are not applicable to his case, petitioner argues that, considering the other evidence offered against him at trial, the admission of the knife was not harmless error.

Petitioner frames his Fourth Amendment claim under the first exception to the bar from federal habeas review, arguing that the state provided no corrective procedures to address the Fourth Amendment violation. The court finds petitioner's argument to be misplaced, particularly in light of the Second Circuit's indication that a petitioner receives a "full and fair opportunity" to litigate a Fourth Amendment claim where a state provides a statutory mechanism for suppression of evidence tainted by an unlawful search and seizure. McPhail v. Warden, Attica Correctional Facility, 707 F.2d 67, 69 (2d Cir. 1983). In Capellan, the Second Circuit noted that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Pro. L. § 710.10 et seq." 975 F.2d at 70n.1 (internal quotation marks and citations omitted). The court thus finds that petitioner's argument would only be cognizable on habeas review if construed as being that he was precluded from using the New York state mechanism because of "an unconscionable breakdown in the underlying process," namely the trial court's erroneous ruling that he was collaterally estopped from seeking to suppress the knife.[1]

While the trial court denied petitioner's motion to suppress without a hearing, petitioner had the opportunity to appeal that ruling to the Appellate Division. The Appellate Division, as noted, determined that the trial court erroneously invoked the doctrine of collateral estoppel but found the error to have been harmless. This ruling would satisfy the court that petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court if the Appellate Division's decision did not constitute an unconscionable breakdown in the process, thereby

---

[1] Petitioner filed a reply to respondent's opposition brief on April 12, 2005 arguing that his case presented the kind of "unconscionable breakdown" described in Cappellan.

7

barring federal habeas review of the claim. Graham, 299 F.3d at 134. The court will thus analyze petitioner's claim in light of the Second Circuit's decision in Gutierrez to determine whether the state court's harmless error ruling was an unreasonable application of the Supreme Court's decision in Chapman. If that ruling was not an unreasonable application of Chapman, the court could not find that there was an unconscionable breakdown in the process and petitioner's claim would be barred from habeas review by Stone v. Powell.

As noted above, the Appellate Division held that the trial court erred in ruling that petitioner was collaterally estopped from relitigating the issue of the knife's admissibility based on a prior ruling in Supreme Court, Queens County. 306 A.D.2d at 542. The Appellate Division went on to rule, citing Crimmins, that "any error in admitting the knife was harmless beyond a reasonable doubt." Id. As the Second Circuit noted in Gutierrez, when the state court explicitly invokes harmless error analysis, a court on federal habeas review must determine whether the Appellate Division reasonably applied the Supreme Court's decision in Chapman, as interpreted by the New York Court of Appeals in Crimmins. 389 F.3d at 308.

In the instant case, the Appellate Division, by citing Crimmins, indicated that the error was harmless beyond a reasonable doubt and that the evidence of petitioner's guilt, excluding the knife, was "overwhelming." Petitioner challenges the state court's determination, arguing that the other evidence presented by the prosecutor, notably the victim's identification of petitioner and the Saint Jude medal, was weak. Petitioner argues that he does not match the description the victim originally gave to the police, that his picture was not identified in a photograph array, and that he was only identified during a line-up composed of fillers who did not resemble the description given by the victim. Petitioner's Brief at 5. Petitioner also argues

that testimony at trial established that Saint Jude medals are common and that the medallion petitioner was wearing at the time of his arrest bore a different inscription from that on the medal worn by the perpetrator. Id.

"In making a determination of harmless error, the court looks to the record as a whole, considering the overall strength of the prosecution's case, the importance of the improperly admitted evidence, and whether the evidence was emphasized at trial." Brown v. Keane, 355 F.3d 82, 92 (2d Cir. 2004). In the context of evidentiary error, courts consider "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985). Of all the evidence introduced at trial, the knife recovered from petitioner's dwelling provided the least connection between petitioner and the burglary. The victim's identification of petitioner as the perpetrator, both during a pre-trial lineup and in court, constituted the centerpiece of the prosecutor's case. Contrary to petitioner's contention, that identification was reliable and unequivocal. While the victim had failed to identify petitioner in an initial photo array, testimony at trial indicated that the photograph of petitioner included in that array was old, not reflecting his appearance at the time of the incident. Tr. 337-38. More importantly, the victim identified petitioner within approximately twenty seconds of seeing a line-up at the police precinct, and her identification was both firm and unwavering. Id. at 352. The victim had previously testified to having had ample opportunity during the burglary to observe petitioner at close range. Id. at 316, 325. The victim also testified that, during the burglary,

her assailant was wearing a Saint Jude medal bearing the inscription "pray for us." Id. at 327-39. Petitioner was wearing a such a medallion at the time of his arrest.

Having reviewed the trial transcript, the court concludes that the victim's identification of petitioner as the perpetrator, corroborated by the Saint Jude medal, was weighty evidence. The knife, by contrast, was a relatively insignificant piece of evidence. The knife lacked distinctive characteristics and served only to strengthen the victim's identification of petitioner. The court cannot conclude that the knife either provided the basis for conviction or removed a reasonable doubt that would have otherwise existed. In reaching its conclusion, the court notes that courts in this circuit have found eyewitness identifications to be sufficiently weighty to warrant a finding of harmless error under the Chapman standard. See, e.g., Aziz v. Warden of Clinton Correctional Facility, No. 92 Civ. 104, 1992 WL 249888, *5-6 (S.D.N.Y. Sept. 23, 1992) (finding credible eyewitness testimony, corroborated by articles of clothing worn by petitioner, to be sufficiently weighty evidence to render Bruton violation harmless under Chapman); Bradford v. Walker, No. 91 civ. 907, 1992 WL 81696, *3 (E.D.N.Y. Apr. 2, 1992) (finding eyewitness identification sufficient to render Bruton violation harmless).

In light of the foregoing, the court concludes that the state court's application of Chapman was not unreasonable. As a result, the court finds that there was no unconscionable breakdown in the state court's procedure for redressing alleged Fourth Amendment violations. Habeas relief is not warranted.

## CONCLUSION

For the foregoing reasons, the court denies the instant petition for a writ of habeas corpus. No certificate of appealability is granted, since the petitioner failed to make a

substantial showing of a denial of his constitutional rights. The petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.

The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: April 27, 2005
       Brooklyn, New York

SERVICE LIST:

Plaintiff *Pro Se*
Robert Manino
00A3801
Shawangunk Correctional Facility
P.O. Box 700
Wallkill, NY 12589-0700

Attorney for Respondent
Shulamit Rosenblum
Office of the District Attorney, Kings County
Renaissance Plaza
350 Jay Street
Brooklyn, NY 11201